:S. L. HIBBARD *et al., Appellants,* V. A.. M. BARKER, *as Mayor, etc., et al., Appellees.*

No. 17,523.

SYLLABUS BY THE COURT.

1. CITIES—*Waterworks—Power of Second-class City to Extend beyond City Limits.* A city of the second class has the power, under sections 744, 750 and 751 of the General Statutes of 1909, to extend its waterworks system by purchasing land six and one-fourth miles beyond the city limits and procuring the right to lay a pipe line therefrom, and to issue bonds to pay for such extension, a majority of the electors having voted in favor of such issue at an election duly called and held.

2. ———— *Municipal Policy Not Controlled by Courts.* Matters of mere municipal policy are not for the courts to control.

Appeal from Montgomery district court. Opinion filed May 6, 1911. Affirmed.

*L. P. Brooks,* for the appellants.

*James A. Brady,* for the appellees.

The opinion of the court was delivered by

WEST, J.: The appellants sought to enjoin the mayor and council of Cherryvale, Kan., a city of the second class, from issuing bonds for an extension of its water-works system. A restraining order was granted, and upon the hearing this was vacated and a temporary injunction refused. The principal contention is that in attempting to go more than five miles from the limits to procure a water supply the city was acting beyond its power. It is insisted that the five-mile limit fixed by the legislature in 1872 still controls.

An examination of the legislation relating to water-works in cities of the second class shows that section 60 of chapter 100 of the Laws of 1872 (Gen. Stat. 1909, § 1405) authorize such .cities to purchase or con-·demn and hold all lands necessary for waterworks with-

in five miles of the city limits. This act took effect March 13, 1872. The same legislature enacted chapter 208, which took effect March 6, 1872, and authorized cities of the second class to contract for and procure waterworks and to condemn and appropriate land necessary therefor "in or out of the corporate limits." (Laws 1872, ch. 208, § 2.) This act provided for the issuance of bonds to defray the cost of such waterworks upon a majority vote cast at an election called by the council, twenty days' notice having been given. Chapter 55 of the Laws of 1895 authorized cities of the second class to purchase, procure, provide, contract for and construct waterworks, light and gas plants, and to issue bonds therefor on a three-fifths petition and a two-thirds vote. Nothing in this act specified where such plants were to be located. Chapter 82 of the Laws of 1897 empowered cities of the first, second and third classes to contract with private corporations for light, power, water or heat, and to obtain the same by constructing, owning and operating light, heat or power plants, or waterworks, and to issue bonds therefor upon a two-fifths petition and a majority vote— no restriction as to the location of any plant or waterworks. Chapter 136 of the Laws of 1903 authorized cities of the three classes to obtain heat, water, light and power, and to purchase, procure, provide and contract for the construction of and to construct and operate gas, light, power and heating plants and waterworks, gas wells and oil wells, and to construct and maintain necessary pipe lines. These cities were granted full power to issue bonds upon a majority vote, no petition being required. Sections 1 to 8, inclusive, of chapter 82 of the Laws of 1897, also section 9 as amended by chapter 107 of the Laws of 1901, were repealed by chapter 136 of the Laws of 1903. Chapter 101 of the Laws of 1905 (Gen. Stat. 1909; §§ 744–747) provided that whenever a majority of the electors of

54—84 KAN.

a city of either class should vote in favor of issuing bonds for the purpose of purchasing, constructing or extending works for the purpose of supplying the inhabitants with natural gas, water, electric light or heating the mayor and council should issue bonds therefor. Chapter 93 of the Laws of 1909 (Gen. Stat. 1909, § 749) repealed sections 1 and 2 of chapter 136 of the Laws of 1903, and provided that the mayor and council of any city of the second or third class might issue bonds for waterworks and other plants upon a vote of a majority of all the qualified electors.

It does not appear that the city was attempting to condemn land, but it is stated by counsel that a tract on the Verdigris river had been purchased and a right of way for a twelve-inch pipe line had been secured for six and one-fourth miles. It is claimed that full power thus to extend the waterworks system and to issue bonds therefor is found in sections 744 and 750 of the General Statutes of 1909. Section 744, so far as material here, is as follows:

"That whenever and as often as a majority of the electors voting at an election heretofore held, or hereafter called and held . . . in any city of the . . . second . . . class, shall vote in favor of the issuance of bonds of such city for the purpose of . . . constructing or extending works for the purpose of supplying such city and its inhabitants with . . . water . . . it shall be lawful for the mayor and the city council of said city, by ordinance duly passed, to direct the issuance of the bonds so voted."

Section 750 (Laws 1903, ch. 136, § 3) authorizes any city of the second or third class "to purchase, procure, provide and contract for the construction of, and to construct and operate . . . waterworks . . . and to secure by lease, contract or purchase natural-gas lands, petroleum-oil lands, and other real estate . . . and to construct and maintain pipe lines . . . for the purpose of supplying said city, its citizens and

others with water, light, gas, power, fuel or heat for domestic use and all other purposes." Section 751 (Laws 1903, ch. 136, § 4) grants full power to issue bonds upon a majority vote of the qualified electors, and we think these provisions furnish sufficient authority for the extension and for the issuance of the bonds, and that the five-mile limit found in the act of 1872 does not impair such authority. Repeated legislation since 1872 expressly authorizing cities to construct or extend waterworks is significant in its omission of geographical limits, and there is no rule of construction requiring us to hold that each subsequent act expressing the later will of the legislature must have read into it the unexpressed intention to retain the limitation of the first enactment. The rule of *pari materia* applies to laws "enacted by the same legislature about the same time concerning the same subject matter" (*In re Hall, Petitioner,* 38 Kan. 670, syl. ¶ 1), and while the rule in a general way applies to all legislation on a given subject, it is less distinctly applicable when long periods of time are covered.

"Statutes relating to the same subject are to be construed together; but this rule does not go to the extent of controlling the language of subsequent statutes by any supposed policy of previous ones." (*Goodrich v. Russell,* 42 N. Y. 177, 184.)

(See, also, Endlich, Inter. Stat. § 220; 2 Lewis' Suth. Stat. Const., 2d ed., § 447; *The State, ex rel., v. Studt,* 31 Kan. 245; *The State v. Menke,* 56 Kan. 77; *United States v. Claflin,* 97 U. S. 546, 552; *Norris v. Crocker, et al.,* 54 U. S. 429; *Howard v. Hulbert,* 63 Kan. 793.)

The election was called by ordinance, and the council declared by resolution that 534 electors voted for and 298 against the proposition to issue bonds with which to extend the waterworks system and build a pipe line to the Verdigris river, and it now appears that the bonds have been issued and sold.

Complaint is made that in passing a certain ordinance the council suspended the rules without unanimous consent, in violation of another ordinance. But the record fails to show the existence of such other ordinance, and the trial court refused to receive the evidence offered for the reason that there was nothing to show the existence of such ordinance. It is also claimed that the mayor and council have mismanaged the city's affairs and have used undue haste and extravagance in the passage of ordinances and the sale of bonds. But their acts appear to have been warranted by a majority of 241 of the qualified electors, and matters of mere municipal policy are not for the courts to control.

Finding no error in the rulings of the trial court, the judgment is affirmed.