No. 28,181.

THE STATE OF KANSAS, ex rel. ARTHUR J. MELLOTT, County Attorney of Wyandotte County, *Plaintiff,* v. DON C. McCOMBS, as Mayor of the City of Kansas City, *Defendant.*

(262 Pac. 579.)

SYLLABUS BY THE COURT.

1. STATUTES—*Construction—Statutes Concerning Same Subject Matter.* The rule that laws enacted by the same legislature about the same time and concerning the same subject matter being *in pari materia* are to be taken and considered together applied to chapters 114 and 121 of the Laws of 1907, the first being the act providing for the commission form of government for cities of the first class and the second being the one relating to the appointment and duties of a purchasing agent.

2. SAME—*Construction—Purchasing-agent Act.* If the strict and literal interpretation of any part of the purchasing-agent act should conflict with the provisions of the act ·under which the commission form of government is authorized, such part or portion of the purchasing-agent act must yield to such modification as will cause it to be not in conflict with the general organization act or out of conformity with the directions contained therein.

3. SAME—*Construction—Purchasing-agent Act.* Any direction or requirement in the purchasing-agent act which in effect gives to the mayor a veto power must necessarily be in conflict with the provisions of chapter 114 of the Laws of 1907 and must be so construed that there be no such conflict.

4. MUNICIPAL CORPORATIONS—*Board of Commissioners—Statutory Authority of Mayor.* The general design and purpose of chapter 114 of the Laws of 1907 is to place the government of all cities coming under its provisions in the hands of a board of commissioners of which the mayor shall be the presiding member with a vote like the other members and with a control and supervision over all the departments of the city, and the control and super-

Mandamus, 38 C. J. pp. 547 n. 86, 549 n. 97, 550 n. 6, 697 n. 95, 745 n. 89. Municipal Corporations, 43 C. J. p. 491 n. 35. Statutes, 36 Cyc. pp. 1077 n. 42, 1079 n. 44, 1147 n. 28, 1149· n. 39, 1151 n. 47; 25 R. C. L. 1013.

vision given to the mayor, as expressed in R. S. 13-2001, is that of an executive and is not superior to the control and supervision of the board, of which he is one.

5. SAME—*Board of Commissioners—Signing of Contracts by Mayor is Ministerial Duty.* The duty imposed upon the mayor by R. S. 13-2003 with reference to the signing of contracts is ministerial and not discretionary and can therefore be compelled by mandamus.

6. MANDAMUS—*Judicial Discretion.* Rule followed that a writ of mandamus is not always an absolute right but is to be given or withheld in the exercise of a sound judicial discretion as the facts and circumstances may warrant.   •

Original proceedings in mandamus. Opinion filed January 7, 1928. Writ denied.

*Arthur J. Mellott,* county attorney, for the plaintiff; *L. S. Harvey,* city attorney, *James F. Getty* and *William Drennan,* both of Kansas City, of counsel.

*J. H. Brady, A. J. Herrod* and *Charles E. Thompson,* all of Kansas City, for the defendant.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original action in mandamus brought by the state of Kansas, on the relation of the county attorney of Wyandotte county, praying for an alternative writ of mandamus against the mayor of Kansas City, Kan., requiring him to sign a contract for the purchase of coal for the city, which contract was agreed to by the governing body of the city by a vote of three to two at a regular meeting of the board of commissioners.

To the alternative writ issued in response to the application of the plaintiff the defendant made answer and return, setting up various reasons for his failure and refusal to sign the contract, among others that the act of the legislature under which the city of Kansas City is now being governed, namely, chapter 114 of the Laws of 1907, gives him as mayor a general supervision and control over all the officers, departments and affairs of the city, and that the act provides that such municipal government shall be the successor of the mayor and council, and that the board of commissioners shall have and exercise all such rights, powers and duties as are conferred upon it by this act, and such other rights, powers and duties as are now or shall be hereafter conferred by the laws of the state of Kansas upon the mayor and councils of such cities not in conflict with the provisions of this act; further, because of the provisions of

chapter 121, Laws of 1907, authorizing the appointment of a purchasing agent and directing that all supplies and equipment for the city shall be purchased by such purchasing agent in conjunction with the mayor, and that the city council shall not allow any bill until after it has been approved by both the mayor and purchasing agent, alleging in this connection that neither the mayor nor the purchasing agent have approved the letting of the contract which it is desired by the board of commissioners that the mayor sign.

It is further alleged by way of answer and return that the bid approved by the board of commissioners is not the lowest and best bid received by the board or recommended by the purchasing agent, and that the price to be paid for coal under such contract is far in excess of the price for which it can be purchased from other dealers on the same terms and conditions and meeting the same requirements as to quality and guarantees, asserting that the act of the three commissioners aproving the contract in question was not for the best interests of the city, and that if opportunity is afforded the truth of such allegations will be furnished, and it is therefore prayed that the writ be quashed, set aside and held for naught, numerous exhibits in the way of resolutions, bids, etc., being attached to the answer. The matter now comes before this court on a motion for a peremptory writ for the reason that the answer of the defendant fails to show cause for not executing the contract in question.

Particular attention is directed by the defendant to the enactment of chapter 121 of the Laws of 1907 after the approval of chapter 114 of the same session, which chapter is the one which outlines and provides the plan for the commission form of government in cities of the first class. Chapter 114 was approved on March 2, 1907, and took effect after its publication in the statute book on May 27, 1907. Chapter 121, the purchasing-agent act, was approved on March 9, 1907, and took effect when published in the official state paper on March 21, 1907; so that, while chapter 121 was approved by the legislature seven days later than chapter 114, it took effect more than two months earlier than chapter 114. We do not think that under these circumstances chapter 121 can be considered, as is suggested, as being an afterthought of the legislature with the intention to amend the original commission form of government act, chapter 114, by something which may have been overlooked or forgotten, or as expressing the intention of the legislature to repeal by this pur-

chasing-agent act any of the provisions of the general act adopted
seven days earlier in the same session.

"Laws enacted by the same legislature about the same time and concerning
the same subject matter, being *in pari materia,* are to be taken and considered
together in order to determine the legislative purpose and arrive at the true
result." (*In re Hall, Petitioner,* 38 Kan. 670, syl. ¶ 1, 17 Pac. 649. See, also,
*Hibbard v. Barker,* 84 Kan. 848, 115 Pac. 561; *State, ex rel., v. City of Law-
rence,* 98 Kan. 808, 160 Pac. 217; *Shortall v. Huppe,* 99 Kan. 639, 162 Pac. 319.)

One thing is very apparent about chapter 121, and that is that it
is made specifically to apply to cities containing more than 50,000
inhabitants which are under the mayor-and-council form of govern-
ment. It would not be difficult or particularly placing any strained
construction upon this act to conclude that it applies only to cities
of that class and under that form of government and not to those
under the commission form of government, because all references to
the city government which are contained in the act are specific refer-
ences to the council form of government; but it is always desirable
to afford the advantages of any beneficial statute to all classes of
cities unless they are definitely and specifically by the language of
the act excluded, and therefore the court hesitates to say, simply
because this act was apparently framed and furnished for the benefit
of cities under the council form of government, that it shall not apply
to cities under the commission form, but would rather follow the
more approved policy of recognizing this act as including cities
under the commission form of government as far as it can be applied
to such cities without being in conflict with the provisions of chap-
ter 114, under which the commission form of government exists.
R. S. 13-1807, being section 23 of chapter 114, makes special pro-
vision with reference to all laws now in existence or hereafter
enacted. R. S. 13-2904, being section 118 of chapter 114, as a con-
cluding or summary provision of that chapter, is as follows:

"Nothing in this act shall be construed as repealing the following sections
. . . and each of said sections, and all other acts or parts of acts now in
force, or which may hereafter be enacted, relating to cities of the first class,
not in conflict with this act, shall continue in full force and effect until amended
or repealed, and all the powers and duties therein conferred upon the mayor
or the mayor and council shall be exercised by the mayor or the board of
commissioners, respectively, in so far as such powers or duties do not conflict
with the provisions of this act."

We conclude in this connection that if any of the provisions of

chapter 121 do in fact conflict with the provisions of chapter 114, to that extent such provisions will not be in force so as to interfere in any way or manner with the due, proper and legal exercise of all the functions and duties defined and prescribed in chapter 114. By chapter 114 the veto power is taken away from the mayor and he is given a vote as a member of the board of commissioners, and if the full use of the provisions of chapter 121 amount to a veto in effect as between the mayor and the other members of the board of commissioners, then the provisions of chapter 121 are directly in "conflict with the provisions of this act (chapter 114)" and to that extent they cannot stand. Disregarding the statement of later and earlier acts, the following is an appropriate rule of construing statutes:

"Where a conflict exists between a later and an earlier act of the legislature, and where the later act does not attempt to cover all the provisions of the earlier act, both acts ordinarily remain in force except on the point where the acts are in conflict, in which respect the later act supersedes, repeals or modifies the inconsistent terms of the earlier enactment." (*Bank v. Reilly,* 97 Kan. 817 [Opinion on Rehearing, p. 827, syl. ¶ 3], 157 Pac. 391.)

Again, the appointive power of all officers of the city under the commission form of government is by R. S. 13-2101 given to the board, which, after enumerating some of the principal officers the board shall appoint, says, "and such assistants and other officers and servants as they may deem necessary for the best interests of the city." If it is contended that such provision is nugatory by virtue of a different provision in chapter 121 with reference to appointment of a purchasing agent, such provision is to that extent in conflict with the provisions of chapter 114 and cannot stand as applied to the commission form of government. Wherever there is any apparent conflict between these two acts the one under which the commission form of government of this city came into being and retains its existence must prevail as against any provisions of chapter 121, which are at most directory as applied to cities operating under chapter 114.

"Different statutes relating to the same subject matter are to be construed together." (*State v. Young,* 17 Kan. 414, syl. ¶ 2. See, also, *State, ex rel., v. Mitchell,* 50 Kan. 289, 33 Pac. 104; *McCreedy v. City of Fort Scott,* 113 Kan. 753, 216 Pac. 287; *Barrett v. Duff,* 114 Kan. 220, 217 Pac. 918.)

There is no good reason why the city cannot avail itself of all the beneficial features of chapter 121 and protect itself by the spe-

cial features therein provided for economical purchase of supplies and equipment for the city by the help of the purchasing agent and mayor without attempting to give such privilege the effect of veto power, to which extent we hold it should not go.   See *State v. Prather*, 84 Kan. 169, 112 Pac. 829, and references therein given.

"The general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object, even if it be necessary, in so doing, to restrict somewhat the force of subsidiary provisions that otherwise would conflict with the paramount intent.   An interpretation which defeats any of the manifest purposes of the statute cannot be accepted.   Every statute, it has been said, should be construed with a reference to its object, and the will of the lawmakers is best promoted by such a construction as secures that object and excludes every other."   (25 R. C. L. 1013.)

Defendant claims that by virtue of R. S. 13-2001 the mayor is given general supervision and control over all city officers, departments and affairs of the city, and that under and by virtue of such control it is his duty to supervise and control the actions of the board of commissioners.   Attention is called to parts of three sections of chapter 114:

"The board of commissioners shall constitute the municipal government of such city and shall be the successors of the mayor and council, and, upon the qualification of the members of said board of commissioners, all powers, rights, duties and emoluments of the mayor and councilmen of the city adopting this act shall cease and terminate.   The said board of commissioners shall have and exercise all such rights, powers and duties as are conferred upon it by this act, and such other powers, rights and duties as are now, or shall be hereafter, conferred by the laws of the state of Kansas upon the mayors and councils of the cities of the first class, not in conflict with the provisions of this act."   (R. S. 13-1807.)

". . . Said board of commissioners so constituted shall have control and supervision over all the departments of such city and to that end shall have power to make and enforce such rules and regulations as they may see fit and proper for and concerning the organization, management and operation of all the departments of such city, and whatever agencies may be created for the administration of its affairs. . . ."   (R. S. 13-1808.)

"The commissioner named as the head of each department shall approve all accounts and claims against it, unless he be absent or fail or refuse so to do, in which event the mayor shall appoint another commissioner to act in his stead during his absence, or to audit such claims and accounts as the said commissioner shall fail or refuse to act upon.   Before payment, all accounts shall be acted upon by at least two members of said board of commissioners . . . ."   (R. S. 13-1809.)

From these it will readily be seen that it was the undoubted intention of the legislature, as well as the people who by their votes placed themselves under the provisions of this act, that the board of commissioners should be the governing body and have the general control of the affairs and business of the city, and that the general supervision given to the mayor does not imply a superior right on his part to negative or undo the things that have been done or enacted by the board of commissioners of which he is a member. Kansas is not without a precedent in this connection, a construction placed upon similar provisions under the old act of city government by mayor and council. The old act provided that the mayor should have the superintending control of all the officers and affairs of the city "and shall be active and vigilant in enforcing all laws and ordinances for the government of the city." A construction was placed upon these provisions by this court in the case of *Metsker v. Neally,* 41 Kan. 122, 21 Pac. 206, in which the closing paragraph of the opinion is as follows:

"We are of the opinion that the power to amove is lodged in the corporation itself, and must be exercised by it at large, unless such power has been delegated to some officer or officers thereof by statute or ordinance. The governing and controlling power of a city is lodged in the mayor and council ordinarily, and therefore the power to amove rests with them jointly, there being no such authority given to the mayor in express terms, or inferentially even, as we understand and interpret the statute. (Dill. Mun. Corp. §§ 241-3, and authorities there cited.) In the absence of such provision, the mayor alone, being only a part of the governing power of the city, could neither remove nor suspend the city engineer; therefore his order suspending the plaintiff on the 3d of July from the office of city engineer was illegal and void." (p. 126.)

By all the rules of construction the conflict, if any, must yield to the unquestioned intention and design to place the ultimate control of the affairs of cities after their adoption of the provisions of this act in the board of commissioners, in which a majority vote expresses its will and determination. It will be observed that the section of the statute requiring contracts to be signed by the mayor (R. S. 13-2003) also requires the city clerk to do the same, further indicating that his signature thereto was by the legislature classed as a clerical or ministerial duty rather than one involving discretion. We conclude that under this form of city government it is the duty of the mayor to sign all contracts regularly passed by the board

State, *ex rel.,* v. McCombs.

of commissioners, that such duty on his part is ministerial, and that mandamus will lie to compel the performance of such duty.

Having reached the conclusion just stated, the only remaining question involved is the duty of the court in the exercise of its discretion as to the issuance of a peremptory writ. A serious difference as to the best interests of the city and taxpayers seems to exist and the expenditure of a large amount of money is involved. In the exercise of sound discretion it would be best not to close this controversy purely as a law question when it concerns so many people, inhabitants of the largest city in the state, and involves such extensive economic problems.

"The court, being vested with some discretion, will not issue a writ of mandamus except where it seems to be necessary and proper to accomplish the ends of justice." (*Arends v. City of Kansas City,* 57 Kan. 350, 352, 46 Pac. 702.)

"The granting of a writ of mandamus rests largely in the sound discretion of the court, and where it is asked to enforce the performance of a duty to the public, the interests of all the people concerned will be regarded." (*City of Potwin Place v. Topeka Rly. Co.,* 51 Kan. 609, syl. ¶ 3, 33 Pac. 309.)

"The award of a writ of mandamus is not always an absolute right, but is to be given or withheld in the exercise of a sound judicial discretion as the facts and circumstances may warrant." (*Drainage District v. Wyandotte County et al.,* 117 Kan. 369, syl. ¶ 1, 232 Pac. 266.)

Following these and other precedents, and in the exercise of judicial discretion, we think the motion for a peremptory writ of mandamus should be denied. It is so ordered.

Harvey, J., not sitting.