J. H. McINTIRE, *as Receiver of the Wichita & Western Railway Company,* v. H. F. WILLIAMSON, *as Sheriff of Pratt County, et al.*

### No. 278.

1. TAXATION— *County Deficiency—Half-mill Levy.* The provision in section 224, chapter 158, General Statutes of 1897, providing for an additional levy of one-half mill to pay the delinquent tax in all counties where there is a deficiency, is constitutional.

2. ———— *Injunction—Tender of Legal Rate.* Where the collection of a tax is attempted to be enjoined for the reason that the per cent. is higher than allowed by law, the legal rate must be paid or tendered before the injunction can be sustained.

3. ———— *Limitation on Power.* Sections 81 and 75, chapter 38, General Statutes of 1897 (Gen. Stat. 1889, ¶ ¶ 964, 965), construed, and *held,* that the latter is a limitation on and not an exception to the former.

4. ———— *Evidence Examined.* The evidence examined, and held sufficient to sustain the findings of the court.

Error from Pratt district court; G. W. McKAY, judge.   Opinion filed October 20, 1898.   Affirmed.

*Fred. W. Bentley,* for plaintiff in error.

*B. D. Crawford, Chas. H. Apt, Howard Hillis,* and *L. B. Kellogg,* for defendants in error.

The opinion of the court was delivered by

SCHOONOVER, J.: In this opinion we have quoted at length the language of learned counsel in their carefully prepared briefs.

This action was brought in the court below by the plaintiff in error, as receiver of the Wichita & Western Railway Company, against J. H. Williamson, as sheriff of Pratt county, the officers of that county, the trustee of Saratoga township in that county, and the Investment Guaranty Trust Company, Limited, to enjoin the defendants from levying a certain tax warrant in the hands of the sheriff on the property of the Wichita & Western Railway Company in the hands of J. H, McIntire, receiver, and particularly from selling certain locomotives and other personal property of the railway company, located in Cullison, Pratt county, to satisfy said warrant.

It appears that on and prior to June 24, 1889, the Kingman, Pratt & Western Railroad Company owned and operated a line of railroad from Kingman to the western line of Kiowa county, Kansas, passing through the city of Saratoga and the county and city of Pratt. The Wichita & Western Railroad Company owned and operated a line of railroad from Wichita to Kingman. On June 24, 1889, the two railroad companies were duly consolidated and merged into the Wichita & Western Railway Company, which succeeded to all the rights, property and liabilities of the two railroad companies. On July 1, 1886, the city of Saratoga issued its bonds for $12,000, bearing interest at six per cent. per annum, payable semi-annually. The Investment Guaranty Trust Company, Limited, defendant, is, and has been since January 1, 1887, the owner of said bonds. The city of Saratoga paid interest on the bonds until about July 1, 1888, but nothing since of interest or principal. In 1889 the trust company recovered judgment against the city of Saratoga for $195, interest then due. In 1891 the trust company recovered judgment against the city of Saratoga for $1945, interest then due.

In October, 1893, the Investment Guaranty Trust Company obtained a judgment and decree of mandamus in the Pratt county district court against the mayor and councilmen of the city of Saratoga, and their successors in office, commanding the levy of a tax of 150 mills on the dollar of the taxable property in the city of Saratoga for the payment of the judgment.   From 1884 to 1887 the city of Saratoga had grown to be a city of 1200 to 1500 inhabitants and had a large number of substantial buildings and business blocks.   In 1887 the city began to decline.   Many of the inhabitants and owners of real property removed from and abandoned the city, and many of the buildings and much personal property were removed from its limits, so that in April, 1893, no election for mayor and councilmen was held.   During the year 1893, a majority of the councilmen elected in 1892 or before that date had moved from the city, so that in 1894, up to April 1, there were no councilmen in the city and no meetings of the mayor and council.   In 1892, or before that time, W. H. Richardson was elected and qualified as mayor, and up to April 1, 1894, no successor had been elected, but he had removed from the corporate limits and in 1894 was not a resident of the city.

In 1894, on the day prescribed by law for holding the regular annual election in cities of the third class, thirteen persons, male and female, held an election for mayor and councilmen.   On the same day the vote was canvassed, and certain persons were declared elected to the various city offices, who qualified before a notary public, organized, appointed a clerk, and passed an ordinance levying 105 mills tax to pay a judgment of record in the district court of Pratt county against the city of Saratoga and in favor of

the Investment Guaranty Trust Company, and a tax of five mills to pay interest due and accruing on bonds. This ordinance was passed on the night of the election.

On April 23, 1894, there was held in the city of Saratoga an election dissolving the city as a body corporate and remitting it to the condition of a part of the township of Saratoga. Thereafter the township trustee made an additional levy on all property within the limits of Saratoga to pay a judgment against the city. On the 6th day of August, 1894, the county clerk of Pratt county made a levy of $\frac{35}{100}$ of a mill to cover a delinquency in the payment of state taxes for 1893, this tax being intended against all the property. A temporary injunction was granted, which upon final hearing was dissolved. The case is here as one belonging to the excepted class. The first assignment of error is "that the court erred in holding the $\frac{35}{100}$ mill state deficiency tax constitutional; that under the constitution the legislature should have levied a uniform tax on all property in the state to meet the deficits in the various counties in the state."

The question presented under this assignment may be stated thus: A. pays his tax in Pratt county; there are a large number of delinquents; the state tax is deficient; a levy of $\frac{35}{100}$ mill on the dollar is made in addition to the regular levy for state purposes. Is the property of A. subjected to such higher rate of taxation than the property of citizens of other counties in the state by reason of the delinquents in Pratt county as to be in violation of section 1, article 11, of the constitution, which provides that "the legislature shall provide a uniform and equal rate of assessment and taxation," and of section 3, article 11, of the constitution, which provides "that the legislature shall pro-

vide at each regular session for raising sufficient revenue to defray the current expenses of the state for two years''?

To provide a uniform and equal rate of assessment and taxation is an unsettled question.  No state pretends to have attained perfection.  The wisdom of many provisions of our law relating to this important matter may be questioned, but our system of assessment and taxation, if faithfully administered, is the equal of any devised and approved by legislative authority in this country.  We shall not attempt to review the system in this opinion.  It is not contended that the general assessment in the first instance is not uniform.  The additional levy made on all property in the county for the payment of the delinquent tax is complained of.  For convenience and economy the state is divided into taxing districts, each county constituting a district.  Section 182, chapter 158, General Statutes of 1897 (Gen. Stat. 1889, ¶ 6951), provides :

''Each county is responsible to the state for the full amount of taxes levied by law for state and other purposes, excepting such amount as is certified by the board of county commissioners and attested by the county clerk to be double or erroneous assessments, or returned by the sheriff 'not found,' and 'no property,' which certified amount shall be credited to the county by the auditor and treasurer of state.''

It is further provided, by sections 224 and 225, chapter 158, General Statutes of 1897 ( Gen. Stat. 1889, ¶ ¶ 7023, 7024 ) :

'' The auditor of state shall on the fourth Monday in July report to the county clerk of each county any balances then due from such county on such delinquent taxes, and the county clerk shall then determine the rate per cent. necessary to raise the said amount,

and shall place the same upon the tax-roll in addition to the rate required to raise the amount of state tax for the current year; provided, that the additional levy herein provided for shall never exceed one-half mill, and shall be continued each year until the amount of delinquent tax of such county is fully paid.

"225. If after the settlement by the county treasurer of any county in November of each year, as provided in section 99, chapter 34, of the Session Laws of 1876, there shall remain due from such county any such portion of the state tax levied for the preceding year, the auditor of state, on the second Monday of July in each year succeeding the said November settlement, shall report to the county clerk of such county the amount of such unpaid tax, and the county clerk shall determine the rate per cent. necessary to raise the said amount, and shall place the same on the tax-roll in addition to the regular levy for state purposes, and the same shall be collected by the county treasurer and paid into the state treasury, as are other state taxes."

These sections fix the liability of the county and furnish authority for the levy in this case. We see no good reason for declaring this deficiency tax unconstitutional. The method of assessment as provided by law is uniform, the method of levying the tax on the assessments made is uniform, the penalties for the non-payment of taxes are uniform, and the method of collecting the tax is uniform, but to insure absolute uniformity in the payment of taxes is not within the constitutional requirement. All the legislature can do is to adopt such a method of collection of taxes and penalties for non-payment as will insure approximate uniformity in payment. It appears to us just to hold responsible, so far as possible, each taxing district for any delinquency occurring therein, and especially to the limit of one-half mill prescribed by the present

law.  This limitation is uniform and equal and makes even the payment of taxes approximately so.  It carries the taxing districts over until a new assessment and equalization of valuation again put several counties and the different classes of property on an equality, while the district is incited to greater diligence and effort in collection of its taxes.

The prompt taxpayer is protected by his discount and by the penalties imposed and the high rate of interest charged against the property of the delinquent, which when collected even up the deficiencies, and by prescribing one-half mill per annum as the limit of the deficiency for which he shall be assessed.

It is further contended that four per cent. is the limit of the levy which could be made by the mayor and councilmen of the city of Saratoga, a city of the third class, for the year 1894, under the following provisions.  Sections 81 and 75, chapter 38, General Statutes of 1897 (Gen. Stat. 1889, ¶ ¶ 964, 965), provide :

" 81.  The city council are authorized and required to levy annually taxes on all the taxable property within the city, in addition to other taxes, and in sufficient amount, for the purpose of paying the interest and coupons as they become due on all bonds of the city now issued or hereafter to be issued by the city, which taxes shall be payable only in cash."

" 75.  At no time shall the levy of all the city taxes of the current year exceed four per cent. of the taxable property of the city, as shown by the assessment books of the preceding year."

In construing these sections, we conclude that section 75 is a limitation on and not an exception to section 81.  The city council are authorized and required to levy a tax for the purpose of paying interest and coupons, but all taxes levied in each year by the city

council shall not exceed four per cent. of the taxable property within the city.

The plaintiff in error, having made no payment or tender of that portion of the tax levied by the township trustee, and having made no payment or tender of the city tax up to the four-per-cent. limitation, is not entitled to an injunction. (*Bank of Garnett v. Ferris*, 55 Kan. 120, 39 Pac. 1042 ; *Wilson, Treasurer, v. Longendyke*, 32 id. 267 ; *Gulf Railway Co. v. Morris*, 7 id. 210.)

It is further contended that the election held in the city of Saratoga in April, 1894, was not a valid election, and that the officers elected, or who assumed to act, had no authority to pass the ordinance levying a portion of the tax complained of. We have examined the record, and comment on the proceedings is unnecessary. We conclude from the evidence that the findings of the trial court are sustained, and that the election was legal, and the ordinance levying the tax legally passed. The judgment of the district court is affirmed.