No. 31,977

John F. Millhaubt, Herman Hill and George Rogers, as The Board of County Commissioners of the County of Sedgwick, *Appellees*, v. R. M. McKee, County Treasurer of the County of Sedgwick, The Atchison, Topeka & Santa Fe Railway Company, The Kansas Gas & Electric Company, The Southwestern Bell Telephone Company, J. M. Kurn and John G. Lonsdale, as Trustees, The St. Louis-San Francisco Railroad Company, and The Missouri Pacific Railroad Company, *Appellants*.

(40 P. 2d 363)

Opinion filed January 26, 1935.

*Bruce Hurd,* of Topeka, *J. D. Houston, W. E. Stanley, W. F. Lilleston, Henry V. Gott, Arnold C. Todd,* all of Wichita, *W. P. Waggener, J. M. Challis,* both of Atchison, and *J. W. Jamison,* of St. Louis, Mo., for the appellants.

*John W. Wood,* of Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action in which the county commissioners of Sedgwick county ask a writ of mandamus to compel the county treasurer to disburse certain tax money that was paid under protest and to compel defendant railroads to withdraw their protests. Judgment was for plaintiffs. Defendants appeal.

The taxes involved are those payable in December, 1933. The action arises on account of a dispute about which tax limitation statute controls. The levy which is attacked here was 4.5 mills in the aggregate. Defendant railway companies paid such of their taxes as they deemed illegal under protest. The county treasurer is holding such amount, awaiting the outcome of this action.

Chapter 309 of the Laws of 1933 is what is generally known as the "levy limitation" statute. It provided a comprehensive plan for limiting the amount that could be levied in the counties in Kansas. It divided the counties into seven classes according to assessed valuation. It limited the aggregate levy of a county the size of Sedgwick to 3.5 mills and limited the levy for the poor fund to one mill. Provision was made in the statute for the board of county commissioners to secure permission from the state tax commission to make an additional levy of one mill for poor relief. This act was approved March 25, 1933, and became effective on publication April 3, 1933. That levy was made under the authority of the above statute. Chapter 309, however, was not the only act passed by the legislature of 1933 that dealt with tax levies. Chapter 198 deals with that subject as applied to Sedgwick county alone. It provides for a levy of one mill for the poor fund and provides that such a levy shall be in addition to the one provided for by R. S. 1931 Supp. 39-340. That section was an act increasing the poor levy to one-half mill. Chapter 198 further provided that in any county affected by the act if the poor fund should become exhausted before the additional levies authorized in the act were made the county commissioners were empowered to issue warrants in the amounts necessary to care for the poor, unemployed and unfortunate in an amount not greater than could be raised by the additional levy.

The act further provided that it should not be in effect after December 31, 1934. This act was approved March 21, 1933, and took effect on its publication in the official state paper March 24, 1933. It will be seen that this act had been in effect eleven days when chapter 309 became effective. The county commissioners claim that they made the extra one-mill levy under the authority of chapter 198. They allege that they have issued warrants under its provisions. The defendants point out the fact that chapter 309 became effective several days after chapter 198 and limits the making of an additional levy to an application to the state tax commission for permission, and that chapter 198 is a special act, while chapter 309 is a general one purporting to formulate a tax-limitation policy for the entire state. They argue that because of all these circumstances the passage of chapter 309 repealed chapter 198 by implication. Defendants strengthen this view by pointing out that chapter 198 provides that the levy provided for in that chapter is in addition to the one provided for in R. S. 1931 Supp. 39-340, and that section was repealed by implication. It may be stated here that R. S. 1931 Supp. 39-340 was a section that conferred the power on county commissioners to make additional levies for poor relief and chapter 191 only amended it in some particulars so as to give the counties of a certain population additional authority. Furthermore, chapter 191 did not go into effect until publication in the statute book, which was some weeks after the publication of chapters 309 and 198. It may safely be said that chapter 191 does not need to be considered in this case. We will place the decision on the question of whether chapter 309 repealed chapter 198 by implication. Defendants rely on *Topeka v. McCabe*, 79 Kan. 328, 99 Pac. 602. There this court said:

"It is true that repeals by implication are not favored, but this rule has no application where the later statute is obviously intended to cover the entire subject matter of the prior act, and its provisions are manifestly intended as a substitute therefor. (Citing many cases.)" (p. 331.)

We are unable to say that it is obvious that chapter 309 was intended to so cover the subject matter of chapter 198 as to be manifestly intended as a substitute therefor. The provision in chapter 198 giving the county commissioners authority to issue warrants if the fund for the support of the poor should become exhausted before the levies provided for are made is enough to take the chapter out of the above rule. This view is strengthened by the fact that chap-

ter 198 is only in effect for one year by its own provisions. The application for the writ alleges that plaintiffs have issued warrants in excess of the amount of the one-mill levy.

It will be remembered that there were about ten days after chapter 198 became effective before chapter 309 became effective. This was ample time for warrants to have been issued. While the pleading does not state that the warrants held were issued during this period of time, still the fact that they could have done so makes it obvious that the legislature intended to make such a happening possible. At any rate a sufficient period of time had elapsed between the taking effect of chapter 198 and chapter 309 that it cannot be said that circumstances were such that chapter 309 could ever be a substitute for chapter 198. Plaintiffs meet this argument by urging that counties had the right to issue no-fund warrants without the authority of chapter 198 until the passage of the cash-basis law, which is chapter 319 of the Laws of 1933. The answer to that is two-fold—the authority to make the additional levy and the authority to issue no-fund warrants go hand in hand in chapter 198. It would do no good to have authority to issue the warrants unless there was also authority to make the additional levy, since everyone could see that there would be as much demanded of the poor fund in the year that was coming as in the year just passed. The other answer is that the cash-basis law was being considered during most of the time that the legislature was in session. The members of both houses were familiar with its provisions. The general purpose for which it was being considered was to forbid cities, counties and school districts issuing no-fund warrants. Probably no bill that was enacted received such general consideration. No doubt the legislature foresaw this and conferred on the county commissioners the authority to issue warrants under the circumstances covered by chapter 198.

It is not always held that the later act of a legislature repeals another by implication. In the case of *State, ex rel., v. McCombs,* 125 Kan. 92, 262 Pac. 579, this court said:

"'Laws enacted by the same legislature about the same time and concerning the same subject matter, being in *pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result.' (*In re Hall, Petitioner,* 38 Kan. 670, syl. 1, 17 Pac. 649. See, also, *Hibbard v. Barker,* 84 Kan. 848, 115 Pac. 561; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217; *Shortall v. Huppe,* 99 Kan. 639, 162 Pac. 319.)" (p. 95.)

We have concluded that the case under consideration comes under the rule announced in those and analogous cases. These two chapters of the Laws of 1933 deal with the same general subject and were enacted and put into effect on days so close together that allowing for the manner in which the work of a legislature is performed they might be said to have been passed at the same time.

This is a sufficient reason for affirming the judgment of the trial court.

Plaintiffs urge in addition that the protests filed by defendant railway companies were insufficient under the statutes. The statute is R. S. 1933 Supp. 79-2005. It is as follows:

"Any person, association, partnership or corporation, before protesting the payment of his taxes, shall be required, at the time of paying said taxes, to make and file a written statement with the county treasurer clearly stating the grounds on which the whole or any part of said taxes are protested, and shall further cite any law, statute, or facts on which such taxpayer relies in protesting the whole or any part of such taxes, and shall further state the exact portion of said tax which is being protested: *Provided,* That the county treasurer is authorized to disburse to the proper county funds all portions of such taxes not protested."

It will be noted that the statute requires that the protest should state clearly the grounds upon which the taxpayer relies. The protests filed in this case simply stated that the aggregate limit which Sedgwick county could levy was 3.5 mills and that the county had actually levied an aggregate of 4.5 mills. As a matter of fact, what the taxpayers were relying on was the claim that chapter 198 had been repealed by chapter 309 by implication. Such a statement was necessary in order for the protest to be a clear statement of what statute the taxpayer relied on. We have concluded that the protests were insufficient.

The judgment of the trial court is affirmed.