No. 32,297

KANSAS GAS AND ELECTRIC COMPANY, *Appellee*, v. L. A. DALTON, GEORGE DENCHFIELD and CURTIS SHULTZ, as the Board of County Commissioners of the County of Greenwood; S. C. WILLEY, as County Treasurer, and SAMUEL BROOKOVER, as County Clerk, *Appellants*.

(46 P. 2d 27)

60 .

 Opinion
filed June 8, 1935. 

*Clarence V. Beck,* attorney general, *Walter T. Griffin,* special counsel, and *I. F. Benest,* county attorney, for the appellants.

*R. C. Woodward,* of El Dorado, and *Blatchford Downing,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order and judgment of the trial court overruling a demurrer to a petition in an action to recover taxes paid under protest. The tax involved is that imposed on plaintiff's property in Greenwood county by the 1933 levy for delinquent state taxes. Broadly speaking, two points are argued: (1) The constitutionality of the statute under which the levy was made, and (2) the effect on the validity of the levy of the fact alleged to be true that the delinquent taxes had been paid before the levy in question was made and extended upon the tax rolls.

The pertinent allegations of the petition shortly stated are: That plaintiff owned property in Greenwood county of the assessed value in 1933 of $841,505; that the state and county taxes levied on such property for that year amounted to $11,788.53, one half of which was payable by December 20, 1933, and the other half by June 20, 1934; that the ordinary rate of state taxes for that year was 2.65 mills per dollar, but in addition thereto there was levied, under R. S. 79-2917, an additional tax, commonly designated the state delinquency tax, at the rate of .61 mills per dollar, making the total rate for state taxes 3.26 mills per dollar; that the amount of tax imposed against plaintiff's property on account of this delinquency rate was $513.32; that this was imposed because of the claimed delinquency in the state tax of 1931 not collected and paid over to the state treasurer by November, 1932, as provided by R. S. 79-2201 and R. S. 79-2203; that in December, 1933, plaintiff paid, under a written protest to be mentioned later, the first half of this tax in the sum of $256.66; that the delinquency levies for state taxes in the various counties of the state for 1933 were not uniform, some

having no such tax, the state rate being 2.65 mills per dollar, others having different rates for the delinquency state tax, the highest state rate in any county being 3.63 mills per dollar. Appended to the petition was a table showing the state rate in 94 counties. It is alleged that plaintiff and other taxpayers similarly situated were subjected to an unequal, nonuniform, unlawful and invalid tax, which as to plaintiff was the tax in question; that the imposition of such tax is contrary to and in violation of section 1 of article XI of our state constitution, and that to require plaintiff to pay such tax would be to deprive it of its property without due process of law and to deny it equal protection of the law, contrary to the fourteenth amendment to the federal constitution.

Plaintiff alleged the levy and imposition of the tax was invalid for the further reason that although the state auditor, on or before the second Monday of July, 1933, certified to the county clerk that there was a delinquency payable to the state treasurer on account of state taxes for 1931, not collected by November, 1932, in the sum of $12,361.50 for the state general fund and $3,345.29 for the soldiers' compensation fund, pursuant to R. S. 79-2917, yet prior to the time of such certification there had been collected from the 1931 tax levy and tax of prior years by the county treasurer, for the account of the state, an aggregate amount in excess of the certified deficiency, all as more fully shown by an exhibit attached to the petition; that as a result of this the so-called delinquency in tax funds due the state from the county, so certified by the state auditor to the county clerk, was not a delinquency in fact; that such delinquency did not exist at the time of the certification, and there was no necessity or justification for imposing the delinquency tax on the taxpayers; that if R. S. 79-2917 and R. S. 79-2201 be construed to require the levy of a tax for nonexistent delinquencies the effect thereof is to impose a nonuniform and illegal rate of taxation for state purposes and to impose a greater rate of taxation for state purposes upon plaintiff and other taxpayers in Greenwood county than is imposed upon other taxpayers whose property is situated in other counties, contrary to section 1 of article XI of our state constitution, and that the effect of such action is to deprive plaintiff of its property without due process of law, and to deny it the equal protection of the law, contrary to the fourteenth amendment of the federal constitution. It further is alleged plaintiff had made its demand upon

the board of county commissioners of the county for a refund of the taxes, which demand had been refused.

We now take up the legal questions. The first of these is the constitutionality of R. S. 79-2917. This question was specifically presented in the written protest filed by plaintiff at the time it paid the tax now sought to be recovered. R. S. 79-2917 was enacted in 1885 (Laws 1885, ch. 199, § 6). It is one of several sections of our statutes providing for the assessment, levy and payment of state taxes; what to do when there are delinquencies in payment by the owners of taxed property; what to do with surpluses, if any, of taxes paid. That such delinquencies or surpluses may exist is common knowledge. Any fairly accurate tax system—and that is all the best of them are—must take these contingencies into account. The general outline of the plan is this: The state tax commission, which has general supervision of the system of taxation throughout the state (R. S. 79-1402), having performed the many duties required of it by statute (R. S. 79-1404 and other sections), ascertains the assessed value of all the taxable property in each county in the state, and from appropriations and other legislative acts ascertains the amount necessary to be raised for state purposes by a tax on property. It is then required to "apportion the amount of tax for state purposes as required by law to be raised in the state among the several counties therein, in proportion to the valuation of the taxable property therein." (R. S. 79-1409 [see Supp.].) Each county is responsible to the state for the full amount apportioned to it to be raised by taxes for state purposes. (R. S. 79-2203.) The board of county commissioners levies the tax (R. S. 79-1802). In doing so it must use the valuations fixed by the state board as a basis for the levy (R. S. 79-1409). In this case it appears all this was done in 1931 in harmony with these statutes. The taxes levied for that year were due November 1, 1931 (R. S. 79-1804), and payable one half by December 20, 1931, the other half by June 20, 1932 (R. S. 79-2004). Provision is made for collecting unpaid taxes on personal property under tax warrants (R. S. 79-2101 *et seq.*) and for the sale of real property for unpaid taxes (R. S. 79-2301 *et seq.*). All these efforts to collect the taxes levied in 1931 normally would be completed before November, 1932, but it is quite possible some taxes levied in 1931 would not be collected by that time. Naturally the functions of government could not stop for that reason. It was appropriate for the legislature to provide for such a contingency. It

has done so in this manner (R. S. 79-2201): In November of each year, or immediately after the annual settlement of the county treasurer with the county commissioners in October, the county clerk shall prepare and forward to the state treasurer and state auditor a statement showing the total state tax collected, the amount paid the state treasurer and the balance of state taxes remaining in the county treasury. The county treasurer is not required to pay into the state treasury more state taxes than shall have been collected in the county. (R. S. 79-2204.) If, after the settlement with the county treasurer in November there remains due from the county any portion of the state tax levied for the preceding year, the state auditor, by the second Monday of July of the next year, shall report the amount of the unpaid taxes to the county clerk, and he shall determine the rate necessary to raise the amount and place the same on the tax rolls, in addition to the regular levy for state purposes, and the same shall be collected by the county treasurer and paid into the state treasury as other state taxes. (R. S. 79-2917.) If the county clerk neglects or fails to do so he forfeits certain penalties and may be removed from office. (R. S. 79-2919.) When by virtue of these provisions the county treasurer shall have paid into the state treasury the full amount of state taxes apportioned to the county for any year, the excess of state taxes collected shall be applied to the payment of the amounts of state taxes apportioned to the county for succeeding years. (R. S. 79-2918.) R. S. 19-539 appears to make a different disposition of surpluses of taxes collected, but, without passing on its validity for some purposes, we hold that it has no application here. There is also a provision (R. S. 79-2913) that if the county treasurer should pay into the state treasury a greater amount than the state tax due from that county for any year the state treasurer at the close of the fiscal year shall credit such overpaid amount to the county upon taxes thereafter to become due to the state.

The form used by the state tax commission in apportioning the amount of state taxes among the several counties of the state, and so certifying such apportionment to the county clerk, sets out the rates used by the tax commission in arriving at the amount. Naturally this is the proper rate for the county commissioners to use in making the levy of taxes for state purposes if the county treasurer does not have an excess of state taxes previously collected. In the event there is such an excess, that should be taken into account by

the county commissioners in fixing the rate of levy of taxes for state purposes. Hence, R. S. 79-2917 and R. S. 79-2918 are designed to apply only to those situations when, on the one hand, in some county there is a delinquency in the collection of the amount apportioned to that county to be raised for state purposes; or, on the other hand, when by virtue of the various statutes pertaining to collection of taxes for state purposes there is in the county treasury an excess of the amount of state taxes apportioned to that county.

Plaintiff's specific contention is that R. S. 79-2917 violates section 1 of article XI of our constitution, which so far as here pertinent reads: "The legislature shall provide for a uniform and equal rate of assessment and taxation; . . ." It is argued that this requires the tax rate to be equal and uniform throughout a taxing district; that the state as a whole is and of necessity must be the taxing district for the assessment, levy and collection of taxes for state purposes, and that to have a higher rate for state taxes in some counties than in others violates the constitutional provision that the rate must be uniform and equal. In this connection it is contended that R. S. 79-1409, requiring the tax commission to apportion the amount to be raised for state purposes among the several counties of the state, and R. S. 79-2203, which makes each county responsible to the state for the full amount so apportioned, are invalid for the same reason. It is argued the county is not a taxpayer; it collects taxes; the property owners are the taxpayers. The points argued, while forcefully put, are not new. These statutes, with no change in their fundamental purposes, have been in force in this state, and constantly used, for half a century or more (see Laws 1876, ch. 34; Laws 1885, ch. 199), except that some of the duties now performed by the state tax commission, created in 1907 (Laws 1907, ch. 408), formerly were performed by other state officers. The constitutionality of these statutes appears first to have been passed upon by our court of appeals in *Railway Co. v. Williamson,* 8 Kan. App. 711. They were there considered and held to be valid, and specifically, as not being in violation of section 1 or section 3 of article XI of our constitution. That conclusion was followed by the same court in *Clark v. Railway Co.,* 8 Kan. App. 733. The Clark case was appealed to this court (*Railway Co. v. Clark,* 60 Kan. 831, 58 Pac. 561), where the question was again examined, and the conclusion reached by the court of appeals in both cases was approved as to the validity of these statutes. How-

ever, this court, in *State, ex rel., v. Bailey,* 56 Kan. 81, 83, 42 Pac.
373, previously had referred approvingly to the statute authorizing
state taxes to be apportioned among the counties. In *Harper County
v. Cole,* 62 Kan. 121, 61 Pac. 403, the correctness of the conclusion
of the court in *Railway Co. v. Clark,* supra, was challenged and the
court was asked to reëxamine the question, and did so. In an opinion
written by Chief Justice Doster the various sections of the statutes
relating to the levy and collection of state taxes, apportionment of
them to the county, and the liability of counties for the sums so ap-
portioned, were considered and their validity sustained. Among the
sections so considered was section 6 of chapter 199 of the Laws of
1885—now R. S. 79-2917. (See, also, to the same effect: *Crebbin
v. Weaver,* 71 Kan. 445, 80 Pac. 977; *Railway Co. v. Reno County,*
87 Kan. 555, 556, 125 Pac. 108; *Kearny County v. Davis,* 88 Kan.
858, 129 Pac. 942; *Clay County Comm'rs v. French,* 139 Kan. 815,
33 P. 2d 312.)

The trial court in this case correctly held plaintiff's contention
that R. S. 79-2917 violates section 1 of article XI of our constitu-
tion is not well taken, being foreclosed by our former decisions.

Plaintiff cites and relies strongly on the decision of this court in
*State, ex rel., v. Leavenworth County,* 2 Kan. 61, which held invalid
an act of the legislature of 1863 (Laws 1863, ch. 63), which under-
took to require a tax to be levied to take up delinquencies in the
collection of state and territorial taxes for several years back to
1858. It was not a part of the plan provided by law for the levy
and collection of taxes at the time the taxes alleged to be delinquent
were in fact levied. A number of things were found to be wrong
with the act. We need not recapitulate them here. This decision
was held (*Railway Co. v. Clark,* supra) not to apply to the statutes
here in question. These statutes are a part of the general plan pro-
vided by the legislature for uniformity and equality in the rate of
assessment and taxation which our constitution (section 1 of article
XI) requires. No contention is made that there was any lack of
uniformity or equality in the assessment and levy of state taxes in
1931, the thing to which the constitutional provision applies. The
manner of apportioning the state taxes among the several counties
according to the assessed value of the taxable property in each
county is a common provision in tax schemes (3 Cooley on Taxation,
4th ed., § 1016). The matter of delinquencies in payment, or sur-
pluses in collection of taxes, is encountered in any scheme of taxa-

tion. The fact that provision is made for such situations does not detract from the uniformity of the plan. This is the substance of our earlier holdings, and it conforms to our present view. In short, these statutes provide if there are delinquencies in payment an added sum, to the extent of the amount needed to maintain the functions of government, must be collected, but when there are surpluses in collections, by reason of the added sum collected or otherwise, that is credited on the amount next to be collected. This enables the government to continue to function through periods of depression or affluence. The plan is uniform throughout the state, and was a part of the law when the 1931 state tax was determined and assessed. It is quite possible, in operating under this plan, that the surplus plaintiff alleged had accumulated by July, 1933, has already been credited on the state tax from this county in 1934, or will be this year, so that plaintiff already has or will soon receive the benefit of it; certainly this is not negatived by any allegation in the petition. We find no reason to hold R. S. 79-2917 to be in violation of section 1 of article XI of our constitution.

Plaintiff's second point is that by July, 1933, when the state auditor certified to the county clerk the delinquency in the collection of state taxes of 1931, reported by the county clerk to him in November, 1932, the delinquencies in the state taxes of 1931 and all prior years had been paid in full, hence that the levy made in 1933 on account of such delinquency was invalid; that if R. S. 79-2917 and R. S. 79-2201 be so construed as to require a levy for such fictitious and nonexisting delinquencies, they violate section 1 of article XI of our constitution; and it is argued such an application of the statutes would cause them to violate other sections of our constitution, specifically section 5 of article XI, which provides that no tax shall be levied except in pursuance of law, which shall distinctly state the object of the same, to which only such tax shall be applied. There are two answers to this contention: *First*, this point was not specifically made by plaintiff in the written protest filed by it at the time the tax was paid which it now seeks to recover. The statute (R. S. 1933 Supp. 79-2005) requires the protest to be made in a written statement "clearly stating the grounds on which the whole or any part of said taxes are protested, and shall further cite any law, statute, or facts on which such taxpayer relies. . . ." The protest filed does not give as a ground for protesting the tax the fact, alleged in the petition in this action, that all delinquent state

taxes for 1931 and prior years had been paid by July, 1933, when the state auditor made his certification to the county clerk; nor does it allege that R. S. 79-2201 is invalid, nor does it allege that section, or R. S. 79-2917, violates section 5 of article XI of our constitution. Plaintiff contends there is some general language in the written protest which covers these things. We are unable to find such language in the written protest, and certainly no such grounds of protest were clearly stated, nor the statute or constitutional section cited. Plaintiff argues that since the protest statement was clearly sufficient on one ground—the first principal point discussed in this opinion—that it sufficiently served its purpose, hence, it is not important that the second principal point presented in its petition was not stated, or not clearly stated. We cannot agree with this view. The written protest should clearly state all the grounds, with definite citations of law, statutes, or facts, on which the taxpayer relies. Nothing less accomplishes the purposes of the statute. (See *Millhaubt v. McKee,* 141 Kan. 181, 185, 40 P. 2d 363.)

The second answer to plaintiff's contention is that it is not well taken in any event. There is no reason to say that R. S. 79-2201 and R. S. 79-2917 violate section 5 of article XI of our constitution. Everything plaintiff alleges was done by the county treasurer, the state auditor, or the county clerk, was done pursuant to law, namely, the statutes hereinbefore referred to. There is a statute imposing the tax, and it distinctly states the object of the same, namely, to provide funds certified by the state auditor to the county clerk, in July, 1933, shown to be delinquent by the report of the county clerk made to the state auditor in November, 1932; and if this produced a greater sum than was then necessary to pay state taxes due, the excess to be applied upon state taxes for subsequent years. That was the object to which it was to be applied. We find no reason to hold either of these sections of the statute to be in violation either of section 1 or of section 5 of article XI of our constitution.

There remains to be considered plaintiff's allegations that to enforce the payment by it of this tax would deprive it of its property without due process of law and deny to it the equal protection of the law, contrary to the fourteenth amendment to the federal constitution. We are unable from plaintiff's petition or its brief to see clearly just in what way plaintiff contends these rights are violated. We see nothing lacking in due process of law. No statute is pointed out as not having been followed by any county or state official hav-

ing anything to do with the matter. Plaintiff does not allege it has been denied a hearing before any court, tribunal, or official. If the statutes hereinbefore discussed are valid, as we hold, nothing is pointed out to us as having been done which remotely resembles lack of due process. Neither is it clear in what respect plaintiff is denied the equal protection of the law. Every taxpayer who pays his taxes, as this plaintiff did, knows that some taxpayers are likely to be delinquent in the payment of their taxes; that notwithstanding this the functions of government must go on; that this may result in an increase of his taxes at the next or some subsequent taxpaying time; that while surpluses of tax money in the hands of tax-collecting officials are not to be purposely created, they sometimes exist, and that it is prudent to provide that they be credited upon future taxes soon to be collected. In all these respects the statutes in question deal with plaintiff just as they do with every other taxpayer in the state. On these points plaintiff's allegations and arguments are so general that we find no specific thing to discuss.

What we have said necessarily results in a holding that plaintiff's petition fails to state a cause of action, and that defendants' demurrer thereto should have been sustained. The judgment of the court below is reversed with directions to sustain the demurrer to the petition.