No. 41,121

KANSAS CITY SOUTHERN RAILWAY COMPANY, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, et al., *Appellees*.

No. 41,122

KANSAS CITY SOUTHERN RAILWAY COMPANY, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, et al., *Appellees*.

No. 41,141

MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, et al., *Appellees*.

(331 P. 2d 899)

Opinion filed November 8, 1958.

R. L. *Letton,* of Pittsburg, argued the cause, and C. R. *Stauffacher,* of Columbus, was with him on the briefs for the, appellant, Kansas City Southern Railway Company.

*Ralph M. Hope,* of Wichita, argued the cause, and *Leo Armstrong,* of Columbus, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Richard W. Stavely, Charles S. Lindberg,* and *Ronald M. Gott,* all of Wichita, were with him on the briefs for the appellant, Missouri Pacific Railroad Company.

*J. K. Dear,* of Kansas City, and *Peter F. Caldwell,* of Topeka, argued the cause, and *Jules V. Doty,* of Ottawa, was with them on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: Three appeals from orders of the trial court sustaining defendants' demurrers to the petitions filed in three actions to recover property taxes paid under protest to the county treasurer of Cherokee county have been consolidated for appellate review.

This court made an order on April 22, 1958, that the three cases would be consolidated provided counsel for all parties stipulated in writing that the decision in one case would control the decisions in the others and pursuant thereto the parties stipulated as follows:

"It is hereby stipulated by all of the parties to the above entitled consolidated appeal cases that each of them agrees that the decision of any one of the above cases shall determine the decision in the other cases, and shall be binding upon all of the parties in each of the other cases."

We shall refer to the railroad as the taxpayer, to the county clerk acting in the capacity of county assessor as the assessor, and to the state commission of revenue and taxation as the commission. By

reason of the consolidation it will be sufficient to consider and refer to only one petition and protest notice.

Both the petition and protest notice are lengthy, and since it will serve no purpose to set them out in full in determining their sufficiency by reason of the attack thereon by the demurrer, we shall not do so.

In brief, the notice of protest served on the treasurer of Cherokee county, pursuant to G. S. 1949, 79-2005, showed that the taxes were paid under protest, the amount being the result of a tax levy against assessments alleged to be excessive, illegal, and void. The amounts involved were enumerated. The ground of protest by the taxpayer was that the taxable value of its property in Cherokee county was fixed by the commission at sixty percent of the true value thereof; at a hearing before the commission, the taxpayer had protested the assessment as excessive, illegal, and inequitable and had asked for the same degree or ratio, of assessment as other properties had to which the same tax levies were applicable; no relief was granted; at a hearing on appeal before the state board of equalization the taxpayer's evidence had clearly showed the assessment to be illegal, excessive, and inequitable because the ratio of sixty percent of the true value of taxpayer's property was so excessive in relation to the ratio of assessment of other properties, above described, as to constitute constructive fraud and a continuing practice of discrimination against the taxpayer and its property; the appeal was denied; the assessment of sixty percent of the true value is grossly excessive, discriminatory, arbitrary, illegal and void and is the result of an adopted policy of constructive fraud and discrimination by the commission against the taxpayer and its property and is in violation of statutory and constitutional mandates of the state and federal governments for the reason other properties, above described, were assessed at not more than twenty-one percent of their true value, as evidenced by the commission's assessment ratio studies over a period of twenty years (provided for by G. S. 1949, 79-1435 to 79-1438, inclusive) so that the true assessment not made by the commission is twenty-one percent; such excessive assessment of the taxpayer's property contravenes and violates § 1 of the 14th amendment to the constitution of the United States, § 1 of article 11 of our state constitution, and G. S. 1949, 79-501; 79-601 to 79-609, inclusive; 79-707; 79-1406; 79-1409; 79-1601 to 79-1605, inclusive.

To prevent imposition of penalties and legal process for collection of the illegal, excessive, and unlawful taxes, taxpayer paid the taxes under protest but it would bring an action to recover back the amount so protested with interest. Notice was also given to the county treasurer of Cherokee county that she was not to dispose or part therewith but to hold the amount paid until the action is disposed of.

Careful examination of the allegations of the petition reflects that they are more extensive than the corresponding statements in the protest notice which was attached to and made a part of the petition as an exhibit. Also attached by stipulation of the parties was a publication compiled by the commission (under G. S. 79-1435 to 79-1438, inclusive) entitled "Report of Real Estate Assessment Ratio Study." The commission's conclusion is that the more extensive allegations in the petition constitute additional facts and matters of law to those set out in the taxpayer's written protest notice, but we take the contrary view that those allegations are merely descriptive of and state more completely the same basic statements contained in the written protest notice. We do not mean to infer that any statements set forth in the written protest notice are too general or insufficient because we are convinced they are specific and sufficient. In other words, we think the petition is more definite and certain than is the written protest notice on the same facts and matters of law and that the petition does not add any facts or matters of law not already set out in the protest notice. The commission cites many cases in support of its conclusion and we agree those cases correctly state the rule of law applicable therein but they are distinguishable from our present question. Here the sole question for appellate review is the sufficiency of this petition when attacked by the demurrer. Other matters covered in the record are purely evidentiary questions and we will not extend this opinion by discussion thereof.

The trial court in sustaining the demurrer transmitted a letter memorandum wherein the petition was briefly summarized. The memorandum closed with this discussion:

"It appears that plaintiff complains of a result (excessive valuation) rather than a fraudulent method in that there are no facts (as distinguished from naked conclusions) pleaded which show any fraudulent, corrupt or oppressive method or action in fixing plaintiff's valuation. There is no concerted action between the State Commission of Revenue and Taxation and the County Clerk (county assessor) of Cherokee County shown. Any different ratios reached

appear to be the result of independent assessing agencies acting wholly independently, and each acting in the absence of any such agreement to 'fix' true values as was found to exist in the case of *C. B. & Q. Rld. Co. v. Commrs. of Atchison County,* 54 Kan. 781. There is no factual allegation that The State Commission transcended its statutory powers, in fact the converse appears. In the absence of these allegations there is no redress available in the courts. [Citations.] Defendants' demurrer is sustained, defendants' attorneys to prepare journal."

It must be admitted that the independent assessing agencies, as considered and designated under the trial court's conclusion, had determined the true value of both the taxpayer's property by the commission and all the other property subject to the same levy of taxation in Cherokee county, as fixed by the assessor thereof, with which true value there is no complaint. Neither the federal nor state constitutions nor the statutes of Kansas were violated by this valuation but the picture changed completely when the commission affixed an assessed value of *sixty percent* of the true value on taxpayer's property to be transmitted to Cherokee county (G. S. 1949, 79-605; 79-609) for the purpose of having a tax levy made thereon by the assessor and the assessor gave all other Cherokee county property subject to the same tax levy an assessed value of *twenty-one percent* of the true value for the same purpose. All this appears on the face of the written protest notice and the petition as does also the factual showing of the taxpayer's efforts to have the situation corrected, which availed it nothing.

Section 1 of the 14th amendment of the federal constitution provides:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The constitution of the state of Kansas in § 1 of article 11, provides:

"The legislature shall provide for a uniform and equal *rate of assessment* and taxation. . . ." (Our italics.)

G. S. 1949, 79-501 provides:

"Each parcel of real property shall be valued at its true value in money. . . ."

These constitutional provisions and the statute are plain, clear, and unambiguous. The powers of our courts in matters of this kind have been established by a long line of decisions to be judicial and not administrative or legislative. As previously mentioned, our

sole function in this case is to determine whether the allegations of the petition sufficiently show that the commission's action was fraudulent, unreasonable, arbitrary, oppressive, or discriminatory. (*Union Pac. Rld. Co. v. State Tax Comm.*, 145 Kan. 715, 727, 68 P. 2d 1; *Hanzlick v. Republic County Comm'rs*, 149 Kan. 667, 670, 672, 88 P. 2d 1111.)

To emphasize the point we are presently concerned with, attention is called to *Reiserer v. Murfin*, 183 Kan. 597, 331 P. 2d 313, this day decided, also involving a trial court's ruling on a demurrer, wherein we said:

"Such matters not appearing on the face of the petition or exhibits properly attached thereto and made a part thereof will not be considered herein." (p. 599.)

In *Rupe v. Smith*, 181 Kan. 606, 612, 313 P. 2d 293, the trial court had overruled a demurrer to a petition in a wrongful death action. On appeal this court stated it cannot read into a petition something that is not there and that evidence may or may not support allegations of a petition, but on demurrer to a petition, this court cannot indulge in inferences as to what the evidence will ultimately show. This brings us right back to *Hanzlick v. Republic County Comm'rs*, supra, where the court said that the real question, then, is whether there is a sufficient allegation that the assessor or county board of equalization was guilty of fraud or conduct amounting to fraud. This rule follows the general rule. (84 C. J. S., Taxation, § 566 [g], p. 1119, [j], p. 1123; 51 Am. Jur., Taxation, § 771, p. 699; 1 Cooley on Taxation, 4th ed., § 302, p. 636.)

Many of our decisions have been cited by industrious counsel but we think it would be surplusage to discuss at length the many questions presented therein although we have considered all of them. That would leave nothing for the trier of the facts to do. Such is not the purpose to be served by an appeal to this court or is this court interested in commencing to serve such a purpose. Therefore, we will touch upon those decisions which set up rules applicable to the merits of this petition.

The case of *Symns v. Graves*, 65 Kan. 628, 636, 70 Pac. 591, stated the controlling rule to be that fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries but the facts therein were not sufficient to satisfy the required standard. In a similar situation in *Finney County v.*

*Bullard,* 77 Kan. 349, 357, 94 Pac. 129, this court, speaking through its then Chief Justice, the Honorable William A. Johnston, and commenting upon an earlier case, said that the rule there adopted for assessment (one class of property was assessed and taxed at its actual value and all other property in the same county was assessed and taxed at only twenty-five percent of its value) was designed to destroy equality and uniformity between classes of property, one basis being used for the disfavored class and another basis for all other property in the county. The rule making such a gross discrimination could not have been adopted or applied in good faith, and hence it furnished a case for equitable relief. (p. 357.)

In *Bank v. Lyon County,* 83 Kan. 376, 378, 111 Pac. 496, plaintiffs' personal property was alleged to have been assessed at forty percent of its value. After stating that equity will grant no relief, if no fraud is shown on the part of the taxing officers or the statutory board of review, for excessive or unequal taxes where the inequality in assessment arises out of mere errors of judgment, accidental omission of property from the tax rolls or accidental differences in valuations resulting from error in judgment, the court there stated.

"The action of the officers in assessing one class of personal property at forty per cent, another at thirty per cent and real estate at twenty-five per cent of its cash value was the result of deliberation and intention, and was so arbitrary and capricious as to constitute fraud on the rights of the plaintiffs . . .," (p. 379.)

and the court further stated:

"If all property in Lyon county had been assessed at forty percent of its full value, the plaintiffs would have had no cause to complain. The fraud upon their rights results from the arbitrary distinction made between their property and other property [p. 381] . . . By illegally valuing the personal property of the plaintiffs at a higher rate than other personal property in the county an inequitable discrimination was made between the plaintiffs and those taxpayers who own no real estate and who pay only upon personal property." (p. 382.)

The last above-quoted case presents a very good discussion of how constructive fraud is made to appear, but we do not consider it necessary to rewrite the entire opinion herein. An interesting treatment of taxation of banks is found in *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33, cited by the parties; but it is not of compelling force in deciding the situation now before us.

The case of *Voran v. Wright,* 129 Kan. 601, 284 Pac. 807, which is an opinion on rehearing (original opinion *Voran v. Wright,* 129

Kan. 1, 281 Pac. 938) quotes a forceful and clear definition of equality and uniformity previously given in *Wheeler v. Weightman,* 96 Kan. 50, 58, 149 Pac. 977. It reads:

" 'The essentials are that each man in city, county and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, constitute invidious discriminations which destroy uniformity.' (p. 58 [Citations].)." (pp. 613, 614.)

Numerous decisions of the Supreme Court of the United States are cited but, as previously stated, we find no justification for discussing them in detail at this stage of the proceeding.

After reviewing the authorities and carefully studying the allegations of the petition and the exhibits made a part thereof, we have no difficulty in deciding that the petition alleges acts on the part of the commission which, when coupled with the alleged knowledge that it had at the time, were so abritrary, oppressive, and grossly discriminating as to constitute constructive fraud on the rights of the taxpayer and to destroy uniformity and equality both in the manner and the result of fixing the assessed valuation at sixty percent of the true value of taxpayer's property for taxation purposes in Cherokee county when all other property located in that county subject to the same tax levy had an assessed valuation for taxation purposes of twenty-one percent of its true value. Thus the petition did state a cause of action and the trial court erred in sustaining the demurrer.

Judgment reversed.

PRICE, J., concurs in the result.

FATZER, J., concurring: I am in accord that the judgment should be reversed. Under G. S. 1949, 79-2005 the written protest should clearly state the grounds with definite citations of law, statutes, or facts, upon which the taxpayer relies. Nothing less accomplishes the purpose of the statute. (*Millhaubt v. McKee,* 141 Kan. 181, 185, 40 P. 2d 363; *Kansas Gas & Elec. Co. v. Dalton,* 142 Kan. 59,

46 P. 2d 27.) In the instant case the protest alleged that the assessment of plaintiffs' property by the commission was 60 percent of its true or market value and was grossly excessive, discriminatory, arbitrary, illegal and void as a result of an adopted policy or practice of constructive fraud and discrimination by the State Commission of Revenue and Taxation against the plaintiffs and their property, for the reason that other taxable property in Cherokee County, Kansas, not assessed by the commission but by the county assessor, was assessed at not more than 21 percent of its true or market value. It was alleged the commission found by its assessment ratio studies over a period of more than 20 years that the average ratio of taxable assessment of true or market value of property in Cherokee County not assessed by the commission, was 21 percent.

The protest did not allege a conspiracy or concerted action between the commission and the county clerk of Cherokee County, or between other local assessors as was the case of *C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.,* 54 Kan. 781, 39 Pac. 1039. However, under the tax system established by the legislature, the commission has been given general supervision and has broad plenary power over the system of taxation throughout the state. (G. S. 1949, 79-1401, *et seq.*)

Time does not permit a complete analysis of these statutes, but suffice it to say the commission is empowered with general supervision over the administration of the assessment and tax laws of the state, over township and city assessors, boards of county commissioners, county boards of equalization, and all other boards of levy and assessment to the end that all assessments of property, real, personal, and mixed, be made relatively just and uniform and at its true and cash market value. Thus, the commission is empowered following a study of assessment practices and procedures of any local assessor, pursuant to G. S. 1949, 79-1435, *et. seq.,* to review such assessment and to either raise or lower the same pursuant to the information available to the commission through its study.

In the instant case the protest alleged that for more than 20 years, as a result of the commission's own assessment ratio studies, it was advised that the average rate of assessment of property to its true or market value in Cherokee County, which was not assessed by the commission, was 21 percent. Thus, for a period of years the com-

mission was advised by its own studies that the statutes of the state were being flagrantly disregarded by the local assessment officials in Cherokee County, but it failed to take corrective measures to require that the assessments be made at the true or market value of the property assessed; consequently, such failure, over such period of years, can justify no other conclusion than that of an adopted policy or practice of constructive fraud and discrimination against the plaintiffs and their property. The result is that the rate of assessment fixed by the commission at 60 percent of the true or market value of plaintiffs' property, when applied to the rate of assessment of 21 percent of the true or market value of all other property located in that county and subject to the same tax levy, is illegal and the petition states a cause of action.

SCHROEDER, J., joins in the foregoing concurring opinion.