No. 41,060

Joe Reiserer, *Appellee,* v. Iryl W. Murfin, Fred I. Murfin, William R. Murfin, Co-Partners, d/b/a The Murfin Drilling Company, *Appellants.*

(331 P. 2d 313)

Opinion filed November 8, 1958.

*A. D. Weiskirch,* of Wichita, argued the cause, and *Manford Holly,* of Wichita, was with him on the briefs for the appellants.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: Plaintiff, appellee, filed this action against defendants to recover damages by reason of defendants having permitted substances to escape from their oil lease operations which substances entered the subsurface strata and fresh-water veins underlying plaintiff's land and the same were thereby polluted. A motion to make definite and certain was sustained in part and overruled in part by the trial court, and plaintiff thereafter filed a supplemental petition. Defendants' demurrer to the petition and supplemental petition was overruled by order of the trial court from which order defendants perfected this appeal.

The petition, in substance, alleged that in October, 1946, plaintiff became the owner of, and he now owns, a quarter section of land in Butler county on which two water wells were located. One well was in a pasture in the northwest quarter of the southwest quarter thereof and was used for watering stock; the second water well was in the northwest quarter of the southeast quarter thereof and was used for domestic consumption. The fresh water supply in each well was ample, good, pure, and wholesome until August 18, 1952, when the wells became impregnated, saturated, and polluted with salt, salt water, and mineralized substances which condition gradually became worse and rendered the water deleterious to livestock and unfit for human consumption. The fresh-water sands or veins of the wells were the only known ones on plaintiff's land. Defendants owned and operated an oil and gas lease on the Dougherty forty acre farm one-half mile east of plaintiff's land and another on the Maclean forty acre farm immediately adjacent and east of the Dougherty land. Defendants completed one or more oil and gas wells on July 23, 1952, on the Dougherty and Maclean premises. In drilling these wells defendants penetrated various fresh-water strata or veins and also sand or veins containing salt water or other mineralized substances and failed to exclude all salt water or water containing mineralized substances from the fresh-water veins or strata which furnished fresh water to plaintiff's wells, or in the drilling or operation of the lease and in ways unknown to plaintiff, defendants permitted salt water to escape, enter, and flow into the fresh-water veins under plaintiff's land polluting same in violation of G. S. 1949, 55-118, 55-121. The polluted condition is permanent. Thereafter followed allegations of damages which will not be re-

peated because they are not in issue on this appeal from the trial court's order overruling the demurrer.

A lengthy motion to make definite and certain was sustained in part and plaintiff was thereby required to state in feet the depth of the fresh-water wells on his land. The remainder of the motion was overruled. Plaintiff supplemented his petition by stating that the well in the pasture used for watering livestock was thirty-two feet deep and the well located near the house and used by plaintiff and his family was sixty feet deep.

Defendants then demurred to plaintiff's petition and supplemental petition for the reason that the allegations, averments, and statements therein set forth failed to state a cause of action against the defendants or either of them.

Defendants appealed from the trial court's order overruling this demurrer and here contend that the petition is not based upon a definite legal theory and that it fails to allege a causal connection between the escape of salt water and other mineralized substances and the pollution of the fresh-water vein underlying plaintiff's land.

Defendants first argue matters which do not appear on the face of the petition but in testing the propriety of the trial court's order overruling defendants' demurrer to the petition we are concerned only with the allegations of that petition. (8 West's Kansas Digest, Pleadings, § 214 [1]; 4 Hatcher's Kansas Digest, rev. ed., Pleading, 1957 Cum. Supp. § 169.) Such matters not appearing on the face of the petition or exhibits properly attached thereto and made a part thereof will not be considered herein. (*Robinson v. Muller,* 181 Kan. 150, 309 P. 2d 651; *Franks v. State Highway Commission,* 182 Kan. 131, 134, 319 P. 2d 535.)

Defendants next contend there is a confusion of theories upon which recovery is sought and they cite a number of authorities which correctly state the rule controlling such a situation (among them *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772) but a study of those decisions readily reveals that the pleadings there involved were entirely different from the one here being considered. As contended by plaintiff, only one cause of action is set out in the petition and the supplement thereto, and it is founded upon statutory liability under the General Statutes of 1949, and more particularly under 55-118 and 55-121, which read as follows:

"If any well or other excavation be put down to or through any vein or strata containing salt water or water containing any minerals in appreciable

quantities, it shall be the duty of the owner or operator, driller or person putting down such well or excavation to case or plug such well or excavation in such manner as to exclude all salt water or water containing minerals in appreciable quantities from both upper and lower veins or strata holding water suitable for domestic purposes." (55-118.)

"It shall be unlawful for any person, having possession or control of any well drilled, or being drilled for oil or gas, either as contractor, owner, lessee, agent or manager, or in any other capacity, to permit salt water, oil or refuse from any such well, to escape upon the ground and flow away from the immediate vicinity of such well, and it shall be the duty of any such person to keep such salt water, oil or refuse safely confined in tanks, pipe lines or ponds, so as to prevent the escape thereof: *Provided, however,* That this act shall not be construed to apply to the escape of salt water, oil or refuse because of circumstances beyond the control of the person in the possession or control of such well and under circumstances which could not have been reasonably anticipated and guarded against." (55-121.)

A pleading is not required to narrate the evidence but it is sufficient to set forth substantive facts in ordinary and concise language (*Emrie v. Tice,* 174 Kan. 739, 258 P. 2d 332) in which we further said:

"A petition which fairly apprises defendant what plaintiff's claim is to be is not properly subject to a motion to make definite and certain and where a motion thereto is properly resisted and overruled the rule of strict construction on demurrer does not apply." (Syl. ¶ 1.)

Defendants' obligation, or duty, is set out in the statutes above quoted and in a damage action under these statutes negligence does not have to be alleged as an element of the petition. In *Martin v. Shell Petroleum Corp.,* 133 Kan. 124, 299 Pac. 261, this court held that negligence did not have to be proved as an element in a damage action under 55-118. It would therefore be a useless thing to require plaintiff to plead something in his petition that he did not have to prove by his evidence.

As to defendants' next contention that plaintiff alleges no causal connection between the escape of salt water and other mineralized substances and the pollution of the fresh water veins underlying plaintiff's land, we are satisfied that defendants' position on this point is untenable because plaintiff alleges that prior to August 18, 1952, his wells had always supplied an ample amount of fresh water for both human and animal consumption and that the wells had become impregnated with salt or other minerals subsequent to the time when defendants started operations. The matter of defendants' responsibility under such circumstances was discussed in

*Rusch v. Phillips Petroleum Co.*, 163 Kan. 11, 180 P. 2d 270, where our court said:

"The entire record has received many hours of our attention. From such study we are forced to conclude that whether it reasonably could be inferred appellants were responsible for the pollution of appellee's springs, ponds and water wells and whether the extent, if any, to which appellants polluted the water was sufficient to cause injury to appellee's stock, were jury questions." (p. 16.)

The Rusch case quoted the following from *Donley v. Amerada Petroleum Corp.*, 152 Kan. 518, 106 P. 2d 652:

" 'It may also be noted that appellees were not obliged to exclude every other possible source of pollution after establishing facts from which it reasonably could be inferred that appellants had polluted the stream. The fact that appellants polluted the stream could, of course, be shown by circumstantial evidence. Such evidence in a civil case in order to be sufficient to sustain a verdict need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury. [Citations] In other words, appellees having established a cause of action against appellants, it was thereafter not a prerequisite to recovery that it be shown appellants were the sole cause of the pollution. [Citation]' (p. 523.)" (p. 16.)

As did appellants in the Rusch case, defendants here rely on *Williams v. Gulf Oil Corp.*, 152 Kan. 672, 107 P. 2d 680. There the court quite properly distinguished the two cases but we do not deem it necessary to repeat that process here. If the evidence in the Rusch case sufficiently established a causal connection between the salt water from appellants' leases and the injury to appellees' stock to withstand a general demurrer, then likewise we think the allegations in our present case, as to causal connection between the salt water and other mineralized substances from defendants' oil lease operations and the pollution of plaintiff's fresh-water wells, were sufficient to withstand the general demurrer to the petition.

We can find no error in the order of the trial court overruling the demurrer.

Judgment affirmed.