(988 P.2d 267)

No. 79,842

In the Matter of the Appeal of Water District No. 1 of Johnson County From an Order of the Director of Taxation On Assessment of Additional Retailer's Sales Tax.

Opinion filed August 13, 1999.

*Marty T. Jackson*, of Speer, Austin, Holliday & Zimmerman, of Olathe, for appellant Water District No. 1 of Johnson County.

*Joan E. Adam* and *Richard Cram*, of Kansas Department of Revenue, for appellee.

*Gary Rebenstorf*, city attorney, *Joe Allen Lang*, assistant city attorney, and *Brian K. McLeod*, *Richard D. Greene*, and *Michael Lennen*, of Morris Laing Evans Brock & Kennedy, Chartered, of Wichita, for *amicus curiae* City of Wichita.

Before BRAZIL, C.J., ELLIOTT and PIERRON, JJ.

ELLIOTT, J.: Water District No. 1 of Johnson County (Taxpayer) appeals the ruling of the Board of Tax Appeals (BOTA) affirming the finding that Taxpayer is not entitled to a tax exemption under K.S.A. 79-3606(n).

We affirm in part, reverse in part, and remand.

Taxpayer is a quasi-municipal corporation which sells water to commercial, residential, and municipal customers in Johnson County, obtaining most of its water from the Kansas and Missouri rivers. The water is then treated at the Hansen Treatment plant in Wyandotte County. From the treatment plant, the water is pumped through pipes to various pumping stations and then on to the customers. Taxpayer purchases electricity to power the pumping stations which pressurize the water. Taxpayer then sells the pressurized water.

The Kansas Department of Revenue (KDOR) issued an assessment of additional retailer's sales tax against Taxpayer for its purchases of electricity and also levied a penalty against Taxpayer.

Taxpayer paid the tax and penalty under protest and appealed the assessment to the Director of Taxation. The Director denied the appeal, finding Taxpayer was not entitled to an exemption because the electricity was used in the "distribution" rather than the "production" of Taxpayer's water. Taxpayer appealed to BOTA, seeking an exemption and a refund of taxes. BOTA denied both requests.

BOTA's orders are subject to review pursuant to K.S.A. 77-601 *et seq.* and Taxpayer has the burden to show that the action taken by BOTA was erroneous. K.S.A. 77-621(a). Tax statutes are not to be extended by implication beyond the clear meaning of statutory language. *In re Tax Exemption Application of Kaul*, 261 Kan. 755, Syl. ¶ 3, 933 P.2d 717 (1997).

Further, tax exemption statutes, such as K.S.A. 79-3606, are to be construed in favor of imposing the tax and against allowing an

exemption. *In re Tax Appeal of Harbour Bros. Constr. Co.*, 256 Kan. 216, 223, 883 P.2d 1194 (1994). On the other hand, tax statutes will be construed favorably to the taxpayer where there is a reasonable doubt as to its meaning. *In re Appeal of Topeka SMSA Ltd. Partnership*, 260 Kan. 154, 164, 917 P.2d 827 (1996).

BOTA, in agreeing with the administrative law judge and the KDOR that the pressurization of Taxpayer's water was part of the distribution (rather than the manufacturing) process, relied on a 50-year-old Iowa case: *Peoples Gas & Elec. Co. v. State Tax Comm*, 238 Iowa 1369, 28 N.W.2d 799 (1947). BOTA also ruled inapplicable our Supreme Court case of *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 891 P.2d 422 (1995). As we read *Collingwood Grain*, our Supreme Court has rejected the reasoning of *Peoples Gas*. In any event, BOTA reasoned the pressurization of Taxpayer's water did not enhance its "intrinsic value," rendering *Collingwood Grain* unpersuasive and inapplicable.

BOTA also relied on K.A.R. 92-19-53 for the proposition that distribution does not qualify for an exemption from sales and use tax because once "the water is processed at the treatment facility, it is fit for human consumption and in its final form." We conclude this ruling is contrary to the language and policy of *Collingwood Grain* and the language of K.A.R. 28-15-18.

Sales and compensating use taxes are consumption taxes representing the largest single source of tax revenue for state governments. Hager, *Kansas' Sales and Use Tax Law: Exemptions for Manufacturing Machinery and Equipment and the Integrated Plant Theory*, 37 Washburn L.J. 543, 546 (1998). In Kansas, sales and use tax revenues account for 39.8% of the total general fund receipts. 37 Washburn L.J. at 546. The legislative amendments to K.S.A. 79-3602(m) require exemption from sales and use tax to be decided on a case-by-case basis as to items not specifically listed as exempt. *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, Syl. ¶ 5, 838 P.2d 354 (1992).

Obviously, the central question we must decide is whether Taxpayer's purchase of electricity is exempt from the compensating use tax. Electricity, of course, is tangible personal property. K.S.A. 79-3602(m). The question is whether the electricity is "consumed

in the production, manufacture, . . . of tangible personal property, . . . for ultimate sale at retail within or without the state of Kansas." K.S.A. 79-3606(n). There is a split of authority as to how the question is to be answered.

The more restrictive way to answer the question is referred to as the Ohio-Georgia or physical change rule. Under this rule, exemption is limited to items which physically change or transform the object of the manufacturing process. 37 Washburn L.J. at 561-62. We read *Collingwood Grain* as rejecting this restrictive rule and instead, as adopting impliedly if not expressly, the integrated plant theory.

The integrated plant theory allows exemption from sales and use taxes where equipment and machinery perform an essential or indispensable function in the manufacturing process regardless of whether a physical change is actually caused in raw materials. 37 Washburn L.J. at 563-65. In other words, the integrated plant theory asserts that the legislative purpose of manufacturing exemptions is inconsistent with an impractical or restrictive construction of those exemptions.

The current version of K.S.A. 79-3606(n) was enacted in 1988, L. 1988, ch. 386, § 3. Legislative history leaves little doubt that the legislature intended to promote economic development; to avoid pyramiding taxation on successive buyers and sellers; and to strike a balance between the longstanding policy of avoiding multiple taxation; and the need to raise revenue for the state's coffers. Then Governor Hayden placed a high priority on an extension of the manufacturing tax exemption in order to promote increased manufacturing activity and to make Kansas more competitive with other states. In an effort to achieve this goal, the legislature left the language of K.S.A. 79-3606(n) broad, omitting the restrictive "transformation" language existing in other states' statutes. See generally, 37 Washburn L.J. at 571-78.

The legislative desire to promote capital investment, to be more competitive with other states, and to make Kansas a more attractive choice for business expansion and location is patently inconsistent with a restrictive, impractical interpretation of this exemption.

### An analysis of Collingwood Grain

We are convinced our Supreme Court adopted the integrated plant theory in *Collingwood Grain*. That case involved an appeal by KDOR from a BOTA ruling, holding the sale of electricity consumed in grain elevator operations was exempt under K.S.A. 79-3606(n). After ruling electricity is tangible personal property subject to exemption, the court detailed the process by which the grain was blended, turned, fumigated, and aerated. 257 Kan. at 238-40.

The *Collingwood Grain* court then discussed the history of K.S.A. 79-3606(n), and how best to define "property used in processing" as applied to the statute. 257 Kan. at 245-46. In doing so, the court rejected KDOR's argument that the blending and cleaning of the grain did not transform or physically change the grain into a different product, thus making it ineligible for exemption. The court stated KDOR placed too much reliance on its assertion that the blending and cleaning of the grain simply produced an unchanged product. 257 Kan. at 250-51.

While the *Collingwood Grain* court acknowledged the grain would not be "transformed" or "physically changed" (thus, failing an application of the Ohio-Georgia physical change rule), it held that the grain was of a different *quality* than before the processes were performed. 257 Kan. at 251. Broadly stated, the court ruled that KDOR's construction of the term "production, manufacture [and] processing" was too narrow. Further, the court seemed to emphasize the processes produced a grain of better *quality* because if the processes were not performed, the grain would rapidly deteriorate. 257 Kan. at 251.

From this, the *Collingwood Grain* court determined that the electricity used to blend and clean the grain was exempt under K.S.A. 79-3606(n) as property consumed in the process of production, manufacturing, and processing. 257 Kan. at 252.

### Collingwood Grain applied to present case

Both KDOR and BOTA have attempted to distinguish the present case from *Collingwood Grain* by stating that the electricity used in pressurizing Taxpayer's water does not produce a different product, that the water is in its final form following treatment at the

Hansen Treatment Plant, and that the pressurization is merely a part of the distribution process.

KDOR and BOTA fail, however, to discuss K.A.R. 28-15-18 and fail to address the fact that Taxpayer presented uncontroverted evidence that the electricity used in pressurization changes the water's physical characteristics and is an integral part of the manufacturing process.

K.A.R. 28-15-18(g) states that all community water systems "*shall* be operated and maintained to provide a positive pressure of 20 psi . . . throughout the distribution system except under extraordinary conditions such as unusual peak fire flow demand or major distribution breaks." (Emphasis added.) Clearly, this requirement means that all water quality standards are not met when Taxpayer's water remains at the Hansen Treatment Plant.

*Amicus* brief of the City of Wichita has provided us with testimony utilized in a pending case from an official at the Kansas Department of Health and Environment concerning pressurization of water and health and safety requirements and testimony regarding an integrated system. Because KDOR and BOTA did not have the benefit of that testimony in the present case, we will not rely on it.

In the present case, Taxpayer presented evidence (essentially uncontroverted) that pressurization is a necessary and integral part of producing a final product: pressurized water. The pressurization of water is an integral part of the manufacturing process and changes its fundamental physical characteristics.

Given these facts, we are simply unable to distinguish the present case from *Collingwood Grain*. Here, as there, the electricity used by the Taxpayer is necessary to prepare its product for the marketplace. And, while the water is still water following its pressurization, the *quality* of the water has changed. Further, if the water were not pressurized, it—like the grain in *Collingwood Grain*—would rapidly deteriorate as it would be nothing more than water subject to all of the health risks inherent to such water.

In short, *Collingwood Grain*, K.A.R. 28-15-18(g), and the legislative history of K.S.A. 79-3606(n) clearly require the conclusion

that the electricity used in pressurizing Taxpayer's water to the pumping stations is tax exempt.

Finally, we must address KDOR's claim that the electricity used to pressurize Taxpayer's water does not fall within the definition of "consumed in production" found in K.A.R. 92-19-53(c). That regulation states consumed in production means used in the actual production processes which shall, *inter alia*, occur at the location where the production or processing activity is carried on.

Given our determination that the pressurization of Taxpayer's water is an integral part of the production process, we are left only with the requirement that it must occur at the location where the production activity is carried on. KDOR argues that because Taxpayer's pumping stations are located 10-15 miles from the Hansen Treatment Plant, the use of the electricity does not occur "at the location where the process is carried on." As stated in *Collingwood Grain*, KDOR reads the regulation too narrowly.

Since the pressurization of Taxpayer's water is an integral part of the manufacturing process, it follows that "production" occurs both at the Hansen Treatment Plant *and* at the pumping stations. The pumping stations constitute the final stop in the production process and are, therefore, a part of the "location where the production . . . is carried on." K.A.R. 92-19-53.

Taxpayer also argues it is entitled to an abatement of the penalty pursuant to K.S.A. 79-3615(f). Unfortunately, this issue is not properly before us. The administrative law judge found that Taxpayer had failed to brief the issue and had, therefore, waived the argument. BOTA did not address the issue at all. Issues not raised before a hearing officer cannot be raised for the first time on appeal. *Furthmeyer v. Kansas Dept. of Rev.*, 256 Kan. 825, 827-28, 888 P.2d 832 (1995). We recognize it may seem illogical that a penalty must be affirmed when the taxpayer is exempt from the tax itself, but that is what we must hold.

In summary, undisputed testimony established that the initial pressurization of Taxpayer's water to its pumping stations is an integral part of the manufacturing process; that the water is not realistically usable until after it is pressurized; that the pressurization of the water changes its character and quality; and that the

pressurization is required by state regulation to meet the health needs of Kansas citizens. We leave for a future case the question of whether the exemption for pressurization can extend beyond the pumping stations.

Accordingly, we affirm in part, reverse in part, and remand for a refund of the contested taxes paid under protest by Taxpayer.